UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SERGIO V. GARCIA,  Case No. 14-10792 TA

    Debtor.

## MEMORANDUM OPINION

Before the Court is whether Debtor has too much unsecured debt to be in a Chapter 13 case. The answer turns on whether Debtor's wholly unsecured junior mortgages count as unsecured debts under § 109(e).[1] Because the Court concludes they do, Debtor's unsecured debts exceed the $383,175 limit set out in § 109(e).

### I. FACTS

The Court finds the following facts, taken from the parties' admissions and judicial notice of the docket in this bankruptcy case.[2]

Debtor filed this Chapter 13 case on March 21, 2014. He scheduled $332,450 of noncontingent, liquidated, unsecured debts. He also scheduled the following secured debts:

| Creditor | Claim amount | Collateral | Collateral value |
|---|---|---|---|
| Green Tree | $201,259 | Debtor's residence (1st mortgage) | $190,000 |
| Bank of America | $ 73,482 | Debtor's residence (2d mortgage) | $190,000 |
| Homewise | $ 7,500 | Debtor's residence (3d mortgage) | $190,000 |

---

[1] All statutory references are to 11 U.S.C.
[2] *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (A "bankruptcy court [is authorized] . . . to take judicial notice of its own docket.").

For the purpose of ruling on eligibility, the parties agree that Debtor's house is worth $190,000, the amount on Debtor's Schedule A. The parties also agree that Debtor's house is encumbered by three mortgages, securing the amounts and in the priority set forth above.

Based on these facts, on May 30, 2014, creditor Consumer Direct Personal Care ("Consumer Direct") filed a Motion to Dismiss (the "Motion"), arguing that the Debtor had too much unsecured debt to qualify under § 109(e). The Chapter 13 trustee raised the same issue in her objection to Debtor's Chapter 13 plan, and filed a brief in support of the Motion. The Debtor filed a brief in opposition. There is no dispute about the critical facts.

## II. DISCUSSION

A. Relevant Bankruptcy Code Sections.

Section 109(e) provides:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 may be a debtor under chapter 13 of this title.

Section 506 provides:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

    (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

    (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

The question is whether the undersecured portion of Debtor's first mortgage, together with the wholly unsecured second and third mortgage debts, count as "noncontingent, liquidated, unsecured debts" for § 109(e) purposes. If they do, then Debtor would not be eligible to be a Chapter 13 debtor:

| Debt | Unsecured/Undersecured Amount |
|---|---|
|  |  |
| Listed general unsecured debts | $332,450 |
| Undersecured portion of Greentree Mortgage | $ 11,259 |
| Bank of America Mortgage | $ 73,482 |
| Homewise Mortgage | $ 7,500 |
| Total | $424,691 |

    B.    <u>Wholly Unsecured Junior Liens</u>. Almost all courts ruling on the interplay of § 506 and § 109(e) have held that wholly unsecured junior liens should be counted as unsecured debts for § 109(e) purposes. *See Scovis v. Henrichsen (In re Scovis),* 249 F.3d 975, 983 (9th Cir. 2001); *Brown & Co. Secs. Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 247 (4th Cir.1991); *Miller v. United States,* 907 F.2d 80, 82 (8th Cir. 1990); *In re Day,* 747 F.2d 405, 406–07 (7th Cir. 1984); *United States v. Dallas,* 157 B.R. 912, 913 (S.D. Ala. 1992); *United States v. Edmonston,* 99 B.R. 995, 999 (E.D. Cal. 1989); *In re Griffey,* 335 B.R. 166, 170 (10th Cir. BAP 2005); *Soderlund v. Cohen (In re Soderlund),* 236 B.R. 271, 274–75 (9th Cir. BAP 1999); *In re Thompson,* 2011 WL 5520963 (Bankr. D. Kan. 2011); *In re Bernick,* 440 B.R. 449, 450–51 (Bankr. E.D. Va. 2010); *In re Smith,* 419 B.R. 826, 831–32 (Bankr. C.D. Cal. 2009); *In re Werts,*

410 B.R. 677, 684–85 (Bankr. D. Kan. 2009); *In re Groh,* 405 B.R. 674, 675–76 (Bankr. S.D. Cal. 2009); *In re Weiser,* 391 B.R. 902, 908 (Bankr. S.D. Fla. 2008); *In re Grenchik,* 386 B.R. 915, 917–19 (Bankr. S.D. Ga. 2007); *In re Buis,* 337 B.R. 243, 248 (Bankr. N.D. Fla. 2006); *In re Lower,* 311 B.R. 888, 892 (Bankr. D. Colo. 2004); *In re Harrold,* 257 B.R. 916, 916–17 (Bankr. W.D. Ark. 2000); *In re Prosper,* 168 B.R. 274, 278 (Bankr. D. Conn. 1994); *In re Mason,* 133 B.R. 877, 878–79 (Bankr. N.D. Ohio 1991); *In re Rifkin,* 124 B.R. 626, 627–29 (Bankr. E.D.N.Y. 1991); *In re Jerome,* 112 B.R. 740, 741–42 (Bankr. S.D.N.Y. 1990); *In re Smith*, 419 B.R. 826 (Bankr. C.D. Calif. 2009); *In re Bos,* 108 B.R. 740, 741–42 (Bankr. D. Mont. 1989); *In re Clark,* 91 B.R. 570, 573 (Bankr. D. Colo. 1988); *In re McClaskie,* 92 B.R. 285, 286–87 (Bankr. S.D. Ohio 1988); *In re Martin,* 78 B.R. 928, 929–30 (Bankr. S.D. Iowa 1987); *In re Potenza,* 75 B.R. 17, 19 (Bankr. D. Nev. 1987); *In re Bobroff,* 32 B.R. 933, 935–36 (Bankr. E.D. Pa. 1983); *In re Ballard,* 4 B.R. 271, 274–75 (Bankr. E.D. Va. 1980).

The rule holds even where the collateral is the debtor's principal residence. *In re Schmidt,* __ F.3d __, 2014 WL 4243251 (8th Cir. 2014); *In re Davis,* 716 F.3d 331, 334–39 (4th Cir. 2013); *Lane v. W. Interstate Bancorp (In re Lane),* 280 F.3d 663, 669 (6th Cir. 2002); *In re Zimmer,* 313 F.3d 1220, 1222–27 (9th Cir. 2002); *In re Pond,* 252 F.3d 122, 124–27 (2d Cir. 2001); *In re Tanner,* 217 F.3d 1357, 1358–60 (11th Cir. 2000); *In re Bartee,* 212 F.3d 277, 284–95 (5th Cir. 2000); *In re McDonald,* 205 F.3d 606, 609–15 (3d Cir. 2000); *In re Griffey,* 335 B.R. 166, 170 (10th Cir. BAP 2005) (following *In re Lane*). *See also In re Woolsey,* 696 F.3d 1266, 1279 (10th Cir. 2012) (implying that § 1322(b)(2) could be used to strip a wholly unsecured lien on debtor's residence).

A few courts have taken the opposite view. In *In re Morton,* 43 B.R. 215, 218–20 (Bankr. E.D.N.Y. 1984), the bankruptcy court ruled that claims deemed unsecured under § 506

should not be counted under § 109(e) because § 506 deals with allowed claims, while § 109(e) concerns claims on the filing date. The court reasoned that claim allowance happens long after the petition date, so § 109(e) eligibility could not be determined at the outset of a case if § 506 bifurcated claims were counted. 43 B.R. at 218–220.[3] In *In re Edmonston,* 99 B.R. 993, 993–95 (Bankr. E.D. Cal. 1988), *abrogated by U.S. v. Edmonston,* 99 B.R. 995, 999 (E.D. Cal. 1988), the bankruptcy court agreed that claims deemed unsecured under § 506 nevertheless should be excluded from the § 109(e) eligibility calculation:

> It is an approach which allows inquiry into the debtor's good faith, it avoids the undue delays which extended hearings on valuation issues could cause (especially in cases where it was not the secured creditor in question who was contesting eligibility but rather an unsecured creditor trying to force the debtor into chapter 11 rather than 13), it preserves the Congressional intent of putting chapter 13 beyond the use of large businesses because there is still the $350,000.00 cap on secured debt, and it encourages resort to and availability of chapter 13 as opposed to chapter 7 liquidation. It also allows the debtor to be more forthright and accurate in the preparation of schedules; a contrary rule could well benefit the less scrupulous debtor and penalize the debtor following the honorable path of full and honest disclosure.

99 B.R. at 995. The district court affirmed the bankruptcy court on other grounds but criticized the court's reasoning on the § 505/§ 109(e) issue:

> The court does not agree with the Bankruptcy Court that the *Morton* test is the proper one for Chapter 13 eligibility because section 506 clearly indicates that the unsecured portion of a secured debt should be treated as an unsecured claim. The court is unconvinced that the section 506 approach will cause excessive delays in chapter 13 proceedings. However, the Bankruptcy Court's order denying the motion to dismiss is affirmed because the SBA waived its right to challenge Chapter 13 eligibility by failing to oppose the confirmation.

99 B.R. at 999.

---

[3] This argument is not persuasive. Disputed claims count toward the § 109(e) cap. *See, e.g., In re Rottiers,* 450 B.R 208, 215 (Bankr. D.N.M. 2011), citing *Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 304–05 (2d Cir. 1997). On the petition date, the unsecured portion of a claim bifurcated pursuant to 506 is either allowed (§ 502(b)); temporarily allowed (Bankruptcy Rule 3018); deemed allowed (§ 502(a)), or disputed. Regardless of the status, the claim should be counted under § 109(e) if it is unsecured. The key issues are not allowance or disallowance but collateral value and claim amount. Those issues are discussed in Section II(D) below.

The Court believes the majority view is correct. Policy considerations aside, it seems clear that an "unsecured claim" referred to in § 506 should be considered an "unsecured debt" in § 109(e). After all, the Bankruptcy Code defines "debt" as "liability on a claim." Section 101(12). Junior mortgages that are "out of the money" based on the value of the collateral are treated as unsecured in Chapter 13 cases, *see, e.g. In re Garn,* 2013 WL 5723746 (Bankr. D. Utah 2013) (wholly underwater junior mortgage is treated as a general unsecured claim), and can have their liens "stripped off." *Woolsey*, 969 F.3d at 1279 (citing cases); *Garn,* 2013 WL 5723746, at *2. Such claims are not secured claims. The eligibility test in § 109(e) is "on the date of filing," so the fact that perhaps, someday, the collateral might increase in value enough to partially secure the claim is not a reason to view the claim as secured on the petition date. There is no reason to suspect Congress intended a different result, and in any event the statutory language is clear. *See In re Taylor,* 737 F.3d 670, 678 (10th Cir. 2013) (where "the words of the statute are unambiguous, the judicial inquiry is complete"). Junior liens that are behind undersecured first mortgages are "unsecured debts" as defined in § 109(e).

  C. <u>Unsecured Portion of Undersecured Claims</u>.

In addition to wholly unsecured junior liens, almost all courts include the undersecured portion of partially secured claims in the § 109(e) debt calculation. *See In re Scovis,* 249 F.3d 975, 983 (9th Cir. 2001); *In re Balbus,* 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. U.S. Through Farmers Home Admin.,* 907 F.2d 80 (8th Cir. 1990) (farm land); *In re Day,* 747 F.2d at 406 (accounts receivable); *In re Claro-Lopez,* 2010 WL 2787621, at *2 (Bankr. S.D. Fla. 2010) (rental property); *In re Grenchik,* 386 B.R. 915 (Bankr. S.D. Ga. 2007) (restaurant equipment); *In re Lower,* 311 B.R. 888, 891 (Bankr. D. Colo. 2004) (business real property).

Where the collateral is the debtors' principal residence, a few courts have held that the

undersecured portion of the partially secured mortgage should not be counted as unsecured debt, since § 1322(b)(2) prevents the Court from modifying the lien. *See In re Munoz,* 428 B.R. 516, 519 (Bankr. S.D. Cal. 2010); *In re Tropper,* 2010 WL 9012919, at *7 (Bankr. N.D. Ga. 2010); *In re Smith*, 419 B.R. 826, 832 (Bankr. C.D. Cal. 2009). *See also In re Soderlund*, 236 B.R. at 275 (the § 506(d) analysis may be different if the partially secured claim encumbers the debtor's primary residence); *In re Winder,* 171 B.R. 728, 731 (Bankr. D. Conn. 1994) (acknowledging that a good faith argument could be made to treat such liens differently). This view has been rejected by several courts. *See In re Werts,* 410 B.R. 677 (Bankr. D. Kan. 2009) (ruled that undersecured portion of home mortgage could be counted under §109(e) despite the § 1322(b)(2) limitations on plan treatment); *In re Brammer,* 431 B.R. 522, 525 (Bankr. D.D.C. 2009) (same). Because it would not change the result, the Court will not rule on the issue of whether the unsecured portion of Greentree's first mortgage is counted under § 109(e).

D. <u>Evidence</u>. There has been discussion in the case law about what evidence courts should consider when weighing § 109(e) eligibility disputes. Many courts have held that they should limit their review to the debtors' bankruptcy schedules, unless bad faith is shown. *In re Scovis,* 249 F.3d 975 (9th Cir. 2001); *In re Lybrook,* 951 F.2d 136, 138–39 (7th Cir.1991); *In re Pearson,* 773 F.2d 751, 756–57 (6th Cir. 1985) (court should rely on debtor's schedules if made in good faith), citing *In re King,* 9 B.R. 376 (Bankr. D. Or. 1981); *In re Redburn,* 193 B.R. 249, 254–56 (Bankr. W.D. Mich. 1996); *In re Rigdon,* 94 B.R. 602, 604 (Bankr. W.D. Mo. 1988); *In re Robertson,* 84 B.R. 109, 112 (Bankr. S.D. Ohio 1988); *In re Koehler,* 62 B.R. 70, 72 (Bankr. D. Neb. 1986). *See also* 2 *Collier on Bankruptcy* ¶ 109.06[3] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2011.

Other courts have rejected this rule as too restrictive and giving debtor too much control

over the issue. *See e.g., In re Pennypacker,* 115 B.R. 504, 506 (Bankr. E.D. Pa. 1990) (declined to give undue weight to debtor's schedules because doing so would allow the debtor "unbridled authority to determine his eligibility for chapter 13 relief").

In *Barcal v. Laughlin (In re Barcal),* 213 B.R. 1008, 1015 (8th Cir. BAP 1997), the bankruptcy appellate panel stated:

> Rather than making final determinations on disputed liabilities, it is appropriate for a court considering eligibility to rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith. . . . In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor. . . . At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.

213 B.R. at 1015. *See also In re Salazar,* 348 B.R. 559 (Bankr. D. Colo. 2006) (quoting and following *Barcal*).

The Court agrees with the approach taken in *Pennypacker, Salazar,* and *Barcal* that, while a debtor's bankruptcy schedules are an important part of the § 109(e) eligibility analysis, the Court is not bound by them, even if they were submitted in good faith. Rather, the Court should be able to consider all readily available evidence, including claims filed, any liens that are obviously avoidable, and the like. The Court agrees that the eligibility inquiry should be summary, without the need for extensive evidence, *Salazar,* 348 B.R. at 564, but holds that taking some evidence beyond the schedules and claims file may be appropriate depending on the size and complexity of the case.

Furthermore, regardless of the scope of the review, it seems fair to take the Debtor at his word if the scheduled value of his property indicates unsecured debts sufficient to put him over § 109(e)'s debt limits. *See, e.g., In re Scovis,* 249 F.3d at 982–83 (court used debtors' scheduled

value of their house to determine § 109(e) eligibility).

III. CONCLUSION

Considering the wholly unsecured junior liens on the Debtor's house, which total almost $90,000, Debtor's total unsecured debt is about $413,432, well over the $383,175 limit imposed under § 109(e). The Motion therefore will be granted. The Court will enter a separate order consistent with this opinion.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: October 3, 2014

Copies to:

Kelley Skehen
625 Silver, SW, Ste. 350
Albuquerque, NM 87102

Ronald Holmes
112 Edith, NE
Albuquerque, NM 87102

Dan Behles
3800 Osuna Road, NE, Ste. 2
Albuquerque, NM 87109